**In re MARION COUNTY TREASURER, Appellant,**

**v.**

**BLUE LUSTRE PRODUCTS, INC., Appellee.**

**In re BLUE LUSTRE PRODUCTS, INC., Debtor.**

**Nos. IP 96–1390 C B/S, 95–08570–FJO–11.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 16, 1997.

Douglas J. DeGlopper, Office of Corporation Counsel, Indianapolis, IN, for Plaintiff.

Mark Bainbridge, Ancel & Dunlap, Indianapolis, Thomas C. Scherer, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for Defendant.

Kenneth C. Meeker, Indianapolis, IN, U.S. Trustee.

*ENTRY AFFIRMING BANKRUPTCY COURT'S DENIAL OF MOTION FOR ORDER DIRECTING PAYMENT OF ADMINISTRATIVE EXPENSE*

BARKER, Chief Judge.

Appellant Marion County Treasurer (the "Treasurer") appeals the Bankruptcy Court's

decision denying the Treasurer's Motion for an Order Directing Payment of Administrative Expense or in the Alternative to Dismiss (the "Motion"). For the reasons discussed below, the Bankruptcy Court's decision is *affirmed.*

## *I. BACKGROUND*

On March 1, 1994, the Treasurer assessed personal property taxes against Appellee Blue Lustre Products, Inc. ("Blue Lustre"). Under Indiana law, these taxes were due and payable in two equal semi-annual installments, May 10, 1995 and November 10, 1995. On November 6, 1995, four days prior to the due date of the second installment, Blue Lustre filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and did not pay the second installment of the property taxes. On May 8, 1996, the Treasurer filed a motion seeking an order directing Blue Lustre to pay the second installment in the amount of $14,173.04, characterizing it as an administrative expense. Blue Lustre filed its objections to this motion on June 4, 1996.

The Bankruptcy Court held a hearing on this issue on July 10, 1996, and denied the Treasurer's motion on September 12, 1996. In so ruling, the court held that, under Indiana law, because the property taxes were not incurred postpetition by the estate, the Treasurer's claim was entitled only to priority unsecured status, rather than to treatment as an administrative expense.

## *II. DISCUSSION*

### *STANDARDS OF REVIEW*

We review the bankruptcy court's findings of fact under a clearly erroneous standard. *See* Fed.R.Bankr.P. 8013; *In re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir.1997); *In re Generes,* 69 F.3d 821, 824 (7th Cir.1995). Reversal under this standard is warranted only "if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992) (citing *EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir.1988)). However, the bankruptcy court's conclusions of law are subject to *de novo* review. *See* Fed.R.Bankr.P. 8013; *In re A-1 Paving,* 116 F.3d at 243; *In re Love,* 957 F.2d at 1354.

### *APPLICATION*

The Court must determine in this case whether the second installment of the personal property taxes constitutes an administrative expense under 11 U.S.C. § 503(b) and is therefore entitled to first priority treatment under 11 U.S.C. § 507(a)(1). Section 503(b)(1)(B)(i) provides that any tax which is incurred by the estate, and which is not of a kind specified in section 507(a)(8), is allowed as an administrative expense. To make this determination, we must first resolve two subissues: (1) whether the property taxes were incurred by the estate, and (2) whether the taxes are of a kind specified in section 507(a)(8). Because we hold that the property taxes were not incurred by the estate and are within those specified in section 507(a)(8), we find that the Bankruptcy Court properly denied the Treasurer's motion.

*The property taxes were not incurred by the estate:*

When a tax is incurred is a determination to be made pursuant to state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In its Conclusions of Law, the Bankruptcy Court held that, under Indiana law, the property taxes were incurred by Blue Lustre on the assessment date of March 1, 1994 (*see* Findings and Conclusions at 4, ¶ 12) and because this date was prior to the date the petition for relief was filed, the court concluded that the taxes were not incurred by the estate. *Id.*

Before examining Indiana law to determine the specific date the taxes were incurred, we must first determine what the Bankruptcy Code means by the term "incurred." "Whether a particular tax has been 'incurred by the estate' is not always easy to determine. The time of assessment or payment may not necessarily be equivalent to the time the tax is 'incurred' for the purpose of establishing priority under section 503(b)(1)(B)." 4 Collier on Bankruptcy ¶ 503.07[1] (15th ed.1997). While the Bankruptcy Code does not define the term "incurred," and the courts in this circuit have

not specifically addressed this issue, other courts have determined that, for purposes of section 503(b)(1)(B)(i), a property tax is incurred as soon as the tax accrues, *see In re Columbia Gas Transmission Corp.,* 37 F.3d 982 (3rd Cir.1994); *In re Overly–Hautz Co.,* 57 B.R. 932 (Bankr.N.D.Ohio 1986), *aff'd,* 81 B.R. 434 (N.D.Ohio 1987), and the debtor is liable for the tax. *See In re Prairie Mining, Inc.,* 194 B.R. 248 (Bankr.D.Kan.1995).

Thus, we examine Indiana law to answer the question, when does the tax accrue and become a fixed liability. Ind.Code § 6–1.1–1–2 provides that property taxes shall be assessed on March 1. While the assessment date and the date the tax is incurred are not necessarily the same date, *see, e.g., In re Garfinckels,* 203 B.R. 814, 818 (Bankr.D.D.C. 1996); *In re Overly–Hautz,* 57 B.R. at 937, Indiana law indicates that these dates are the same, in that Ind.Code § 6–1.1–2–4 imposes the annual tax liability on the person who is the owner of the property *on the assessment date.* Therefore, while the owner is not required to file a personal property tax return until May 15 of the same year, see Ind.Code 6–1.1–3–7, and is not required to pay the taxes until May 10 and November 10 of the following year, *see* Ind.Code 6–1.1–22–9, the liability of the owner is fixed as of March 1. In fact, it appears that the owner's liability would not be affected even if the property were sold after this date.

In the case at bar, it is clear that the property taxes were incurred by Blue Lustre on the assessment date of March 1, 1994, a full twenty months *prior* to the date the bankruptcy petition was filed. Because the estate does not exist until after the bankruptcy petition is filed, *see United States v. Friendship College,* 737 F.2d 430 (4th Cir. 1984), taxes incurred by the debtor prior to the filing of the petition are not taxes incurred by the estate.

The Treasurer has cited several cases holding that property taxes which became due postpetition were entitled to administrative expense treatment. However, the Treasurer fails to note that, in each of these cases, administrative expense treatment was allowed because the taxes were incurred by the estate rather than merely being payable postpetition. *See, e.g., In re Holly's,* 140 B.R. 643 (Bankr.W.D.Mich.1992); *In re Hilton Joint Venture,* 125 B.R. 140 (Bankr. W.D.Pa.1991); *In re Martin,* 106 B.R. 334 (Bankr.D.Me.1989); *In re Trowbridge,* 74 B.R. 484 (Bankr.E.D.Pa.1987); *In re Mansfield Tire and Rubber Co.,* 85 B.R. 437 (Bankr.N.D.Ohio 1987).

Further, the Treasurer has failed to discuss the issue of when taxes are incurred under Indiana law. As we have noted, courts addressing this issue have held that it is the date that property taxes are incurred, rather than the date that taxes are due, that determines whether taxes qualify as administrative expenses. For example, in *Columbia Gas, supra,* where the debtor filed its property tax return prior to the date it filed its bankruptcy petition, but the taxes were assessed and due after the filing of the petition, the court held that the property taxes were incurred by the debtor on the date that state law imposed tax liability on the owner of the property, rather than on the date the taxes were assessed or due. 37 F.3d at 986. *See also Overly–Hautz* 57 B.R. at 937 ("A tax is incurred on the date it accrues, not on the date of assessment or the date it is payable."); 4 Collier on Bankruptcy ¶ 502.10[1] (15th ed. 1997) ("As a general rule, it seems clear that a tax which accrues or is incurred during a prepetition period is not to be considered a postpetition tax claim even though returns or payment on such tax claim is not due until after the petition is filed."). Therefore, because the taxes at issue here were not incurred by the estate, the taxes do not qualify for administrative expense treatment under section 503(b)(1)(B).

*The property taxes are of a kind specified in section 507(a)(8):*

Even if the Court were to hold that the taxes were incurred by the estate, the taxes would be entitled to treatment as an administrative expense only if they are *not* of a kind specified in section 507(a)(8). *See* 11 U.S.C. § 503(b)(1)(B)(i). Property taxes covered by section 507(a)(8) include only those which are incurred prepetition. *See Martin,* 106 B.R. at 338; *Mansfield Tire,* 85 B.R. at 442. Under section 507(a)(8)(B), property taxes that "are assessed before the com-

mencement of the case and last payable without penalty after one year before the date of the filing of the petition," are entitled to treatment as an eighth priority unsecured claim.

As with the term "incurred" under section 503(b), the term "assessed" under section 507(a)(8)(B) is "interpreted in terms of the date a taxpayer's liability for the taxes on the property becomes fixed, not whatever date the property's value is assessed." *Garfinckels,* 203 B.R. at 818. *See also Mining,* 194 B.R. at 258. As discussed above, Indiana law imposed tax liability on Blue Lustre on March 1, 1994, the date of assessment. This assessment and imposition of tax liability occurred twenty months before the bankruptcy case was commenced by the filing of the petition for relief. Therefore, the tax liability was clearly within the meaning of the "assessed before the commencement of the case" provision of section 507(a)(8)(B).

However, as the Treasurer points out, a strict application of the "last payable" requirement of 507(a)(8)(B) reveals that the tax installment at issue here was last payable without penalty on November 10, 1995, a date which was four days after the filing of the petition rather than within one year before the date the petition was filed. As a result, the Treasurer argues, the taxes are not entitled to priority treatment under section 507(a)(8) and therefore are entitled to treatment as an administrative expense.

What the Treasurer's argument fails to consider is that, even if the taxes do not fall within the strict wording of 507(a)(8), they are not necessarily to be considered an administrative expense. In order for the taxes to qualify as an administrative expense, they must also be incurred by the estate. 11 U.S.C. § 503(b)(1)(B)(i). As previously discussed, this requirement is not met here.

Furthermore, the Treasurer's argument discounts the effect of 11 U.S.C. § 502(i), which provides:

> A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

While this section is admittedly somewhat ambiguous,

> [p]roperly interpreted, section 502(i) only makes clear that taxes incurred by the debtor prepetition but not becoming due and payable until after the petition is filed are allowed under section 502 just as any other prepetition claim. The allocation of such status as a prepetition claim denies administrative status. To that extent, therefore, the tax claim is not given a first priority as an administrative claim under section 507(a)(1) but retains its priority status under section 507(a)(8). It bears repeating that except for administrative expenses under section 503, all allowable claims asserted against the assets of a debtor for purposes of distribution are deemed to be claims existing at the time of the filing of the petition.

4 Collier on Bankruptcy ¶ 502.10[2] (15th ed.1997). Application of section 502(i) to the instant case therefore, makes it clear that the second tax installment is entitled to priority status under section 507(a)(8), rather than administrative expense status under section 503(b), because the effect of section 502(i) is to treat the taxes as if they had arisen before the filing of the petition and therefore enable the taxes to satisfy the "last payable" requirement of section 507(a)(8).

In *In re New England Carpet Co.,* 26 B.R. 934 (Bankr.D.Vt.1983), the court construed the effect of section 502(i) similarly, holding that where property taxes were assessed prepetition, but due on a postpetition date that was beyond the "last payable" date of 507(a)(8), the property taxes were nonetheless entitled to treatment as a priority unsecured claim rather than as an administrative expense. *See also In re Carlisle Court, Inc.,* 36 B.R. 209, 217 n. 33 (Bankr.D.D.C.1983) (noting that "[a] tax might, in the general sense, arise during the post-petition period merely because payment is due during that time frame. However, if this is the only relation to the estate, it is deemed to be a pre-petition tax within the meaning of 502(i)

and [507(a)(8) ].”); 4 Collier on Bankruptcy 507.10[3][c] (15th ed.1997) (interpreting section 507(a)(8)(B) as having “no requirement ... that the last date on which the tax could be paid without penalty have occurred prior to commencement of the case,” and concluding that “[s]o long as the tax was assessed prior to the petition date, it will be eligible for priority.”). This construction is also consistent with Congress’ intent “for all property taxes coming due postpetition to qualify for either the first or eighth priority.” *Prairie Mining,* 194 B.R. at 257. Clearly, then, because the taxes are prepetition taxes not incurred by the estate, the taxes are not entitled to first priority as administrative expenses, but are entitled instead to eighth priority as an unsecured claim under section 507(a)(8). *Accord Columbia Gas,* 37 F.3d 982; *In re Wang Zi Cashmere Products,* 202 B.R. 228 (Bankr.D.Md.1996); *Overly–Hautz,* 57 B.R. 932; *In re Kamstra,* 51 B.R. 826 (Bankr.W.D.Mich.1985).

### *III. CONCLUSION*

Appellant Treasurer has appealed the Bankruptcy Court’s Denial of its Motion for Order Directing Payment of Administrative Expense, believing that property taxes that are due postpetition are not entitled to eighth priority status under 507(a)(8) but are entitled to administrative expense treatment under 503(b). Appellee Blue Lustre contends that the property taxes were not incurred by the estate and were therefore not entitled to treatment as an administrative expense. The Court, being duly advised, finds that, (1) the taxes were not incurred by the estate because, under Indiana law, property taxes are incurred as of the date of assessment, and (2) under 507(a)(8), as modified by 502(i), the taxes were a prepetition claim entitled to eighth priority as an unsecured claim. Accordingly, the Court *affirms* the Bankruptcy Court’s denial of the Appellant Treasurer’s Motion.