**In re PAYLESS CASHWAYS, INC., Debtor.**

**Payless Cashways, Inc., Plaintiff,**

**v.**

**Tippecanoe County, Indiana, et al., Defendants.**

**Bankruptcy No. 97–50543.
Adversary No. 00–4086.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Oct. 27, 2000.

Richard M. Beheler, Blackwell Sanders Peper Martin, Kansas City, MO, for Plaintiff.

Cynthia F. Grimes, Lenexa, KS, for Defendant.

*MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Chief Judge.

Debtor Payless Cashways, Inc. (Payless) filed this adversary proceeding seeking to enjoin various taxing authorities from violating the discharge injunction pursuant to 11 U.S.C. § 1141 and the Order confirming Payless' Plan of Reorganization (the Plan) by attempting to collect 1997 property taxes. Defendant Tippecanoe County, Indiana (Tippecanoe) filed a response. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). For the reasons stated below, I will enjoin Tippecanoe from any further attempts to collect 1997 personal property taxes from Payless, but will deny Payless' request for sanctions.

*FACTUAL BACKGROUND*

On July 21, 1997, Payless filed a Chapter 11 bankruptcy petition. It listed Tippecanoe as an unsecured creditor on its bankruptcy schedules. On September 2, 1997, Tippecanoe filed its Proof of Claim.[1] The Proof of Claim was for the second installment of 1996 personal property taxes in the amount of $13,571.41, and for 1997 estimated personal property taxes in the estimated amount of $27,142.82. On November 19, 1997, this Court entered its Order confirming Payless' Plan of Reorganization (the Plan). The Plan provided that all allowed unsecured priority tax claims would be paid in full. The Court established January 20, 1998, as the claims bar date for governmental claims.[2] On

---

1. Claim No. 1314.

2. Case No. 97–50543, Doc. # 1320.

January 16, 1998, Payless objected to the Proof of Claim filed by the treasurer of Tippecanoe County on the basis that the estimated tax was not due and owing on the date Payless filed its Chapter 11 bankruptcy petition. Payless did not object to Tippecanoe's claim in the amount of $13,571.41 for 1996 personal property taxes. Also, on January 16, 1998, this Court entered its routine Order sustaining Payless' objection to the claim of Tippecanoe, provided no written response to the Order was filed on or before February 11, 1998. Tippecanoe failed to file a response by that date, and the Order became final. Moreover, Tippecanoe did not appeal that Order at any time after February 11, 1998. Tippecanoe did, however, sometime prior to May 10, 1998, attempt to collect from Payless its 1997 personal property taxes in the assessed amount of $27,142.82.

Payless claims such an act is a violation of the discharge injunction and of the terms of the Order confirming Payless' Plan.

Tippecanoe argues that the only basis of the claims' objection was that the taxes were not due and owing on September 2, 1997, the date it filed its Proof of Claim, therefore, it was free to collect the taxes when they did become due.

I begin with 11 U.S.C. § 1141 of the Bankruptcy Code (the Code).

## DISCUSSION

Section 1141 provides that the debtor and creditors are bound by the provisions of a confirmed plan, and all debts not dealt with by the plan are discharged:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the pro-

visions of a confirmed plan bind the debtor, . . . and any creditor, whether or not the claim or interest of such creditor . . . is impaired under the plan or whether or not such creditor . . . has accepted the plan.

. . . . .

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan.[3]

The Plan provides that the holder of an allowed priority tax claim shall receive deferred cash payments over a period not exceeding 6 years after the date of assessment.[4] The Plan also provides that Payless "shall distribute to each holder of a priority tax claim for which an allowed amount has been determined as of the Effective Date, an amount, in cash, equal to one hundred percent (100%) of the Allowed Amount."[5] The Plan further provides that "distributions under this Plan shall be in full and final satisfaction, settlement, release and discharge of all Claims and Interests."[6] And, finally, the Plan provides that on the effective date of the Plan, Payless "shall be discharged, pursu-

---

**3.** 11 U.S.C. § 1141(a) and (d). *See also, Fairfield Communities, Inc. v. Daleske (In re Fairfield Communities, Inc.)*, 142 F.3d 1093, 1095 (8th Cir.1998) (stating that a confirmation order discharges claims that arose before the entry of the order); *Harstad v. First American Bank (In re Harstad)*, 39 F.3d 898, 903 (8th Cir.1994) (stating that once the Plan of Reorganization is confirmed, the debtor is dis-

charged from any pre-petition debts not dealt with in the Plan).

**4.** Case No. 97–50543, Doc. # 622, ¶ 3.2, pg. 13; 11 U.S.C. §§ 507(a)(8) and 1129(a)(9)(C).

**5.** *Id.* at ¶ 4.1.

**6.** *Id.* at ¶ 5.11.

ant to § 1141(d)(1) of the Code, from all Claims and all debts that arose before the Confirmation Date." [7] The Plan goes on to state that "[i]n accordance with § 524 of the Code, the discharge provided ... acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests discharged hereby." [8]

 The language of the confirmed Plan served to bar Tippecanoe from filing a liquidated proof of claim for its 1997 property taxes, even though those taxes became a fixed liability for Payless on March 1, 1997.[9] And yet, Tippecanoe did not object to confirmation of the Plan. In *In re Marion County Treasurer v. Blue Lustre Products, Inc. (In re Blue Lustre Products, Inc.)*,[10] the Court held that under Indiana law property taxes are incurred on their pre-petition assessment date, even if the taxpayer is not required to file a return or pay the taxes until sometime post-petition.[11] As such, the *Blue Lustre* Court found that the taxes were entitled to unsecured priority status.[12] Based upon this interpretation of Indiana law, I find that Tippecanoe would have been entitled to an unsecured priority tax claim for its 1997 property taxes, even though those taxes were not due and owing on the petition date. But Tippecanoe did not object to the confirmation of Payless' Plan, and request that the Plan provide for the payment of its 1997 property

tax claim, when the amount of that claim had been determined. As a result, the Order of Confirmation controls and the claim is discharged.[13]

Moreover, Tippecanoe failed to respond to Payless' objection to its claim. Payless objected to Tippecanoe's Proof of Claim on the basis that the 1997 property taxes were not yet due or owing. Tippecanoe could have argued in its response that its claim should be allowed because the claim had accrued pre-petition under Indiana law, even though the claim was unmatured.[14] But, again, Tippecanoe failed to take the appropriate actions to protect its priority claim. The response to Payless' objection was due on or before February 11, 1998, otherwise, the Order became final.[15] Tippecanoe filed no response. Nor did Tippecanoe appeal that Order within 10 days,[16] file a motion with this Court to reconsider that Order, or request relief from that Order from this Court.

Rule 59 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the Rules), provides that a motion to alter or amend an Order of this Court must be filed within 10 days of the entry of the Order.[17] Tippecanoe filed no such motion.

 In addition, Rule 9024 of the Rules provides that Rule 60 of the Federal Rules of Civil Procedure applies to a motion for

---

7. *Id.* at ¶ 11.1, pg. 29.

8. *Id.*

9. *Marion County Treasurer v. Blue Lustre Products, Inc. (In re Blue Lustre)*, 214 B.R. 188, 189 (S.D.Ind.1997); Ind.Code Ann. § 6–1.1–1–2 and 6–1.1–2–4.

10. 214 B.R. 188 (S.D.Ind.1997).

11. *Id.* at 190.

12. *Id.*

13. *See* note # 3.

14. *See McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 741 (8th Cir.1996) (An employ-

ee's claim of discriminatory treatment accrued at the time of termination, not at the time he received the "right to sue letter" making him eligible to file suit. Since termination occurred prior to confirmation of the Chapter 11 Plan, failure to file a proof of claim was fatal to employee's claim, and barred him from proceeding against the debtor post-confirmation.).

15. Doc. # 1113.

16. Fed. R. Bankr.P. 8002(a).

17. Fed.R.Civ.P. 59(e) as made applicable by Fed. R. Bankr.P. 9023.

relief from an Order of this Court. Rule 60 provides that this Court can relieve a party from the effect of an Order for excusable neglect, if the motion for relief is filed within one year of the date of the Order:

**(b) Mistakes; Inadvertance; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... (3) fraud ..., misrepresentation, or other misconduct of an adverse party.... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more that one year after the ... order ... was entered.[18]

Tippecanoe did not petition this Court for relief from its Order sustaining Payless' objection within a year of its entry. Nor has it offered any reasons justifying relief from the operation of the Order sustaining the objection to its Proof of Claim.[19] I, therefore, find that I have no authority to grant Tippecanoe relief at this late date. Thus, Tippecanoe's claim for its 1997 property taxes, a liability that arose pre-petition, was discharged when this Court entered an Order confirming Payless' Plan. And, as will be shown, any attempt to collect that debt without first seeking the relief provided by the Code, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, this Court, or an appellate Court, is a violation of the discharge injunction, pursuant to 11 U.S.C. § 524.

Section 524 provides that a discharge enjoins a creditor from any and all attempts to collect pre-petition debt:

(a) A discharge in a case under this title—

. . . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.[20]

Payless argues that Tippecanoe should be sanctioned in the amount of $2000.00 to compensate Payless for the attorney's fees it has incurred as a result of Tippecanoe's continued violation of the discharge injunction. Nancy Flagg, Payless' tax manager on the date Payless filed its Chapter 11 petition, testified that Payless sustained harm from Tippecanoe's violation of the discharge injunction. She stated that Payless informed Tippecanoe that the claim had been discharged, but Tippecanoe continued to assert its claim. She further testified that Payless' lenders tend to lose confidence when they see documents in Payless' files claiming a delinquency as to property taxes. And she said that Payless' lenders do not grant Payless any flexibility to pay disallowed claims. Counsel for Payless represented that Payless tried for two years to resolve this issue before it filed this adversary proceeding, therefore, it is entitled to monetary sanctions.

Counsel for Tippecanoe argues that Tippecanoe did not willfully violate the discharge injunction. He stated that Tippecanoe's County Treasurer interpreted the Order sustaining Payless' objection to its claim to mean that the claim would be paid when the taxes became due and owing. He also argues that Payless never disputed the claim for 1997 property taxes, nor did Payless object to the claim on the basis of the estimated amount of the claim. The only basis for the objection was the fact

---

**18.** Fed.R.Civ.P. 60(b) as made applicable by Fed. R. Bankr.P. 9024.

**19.** *Id.* at 60(b)(6).

**20.** 11 U.S.C. § 524(a)(2).

that the taxes would not be due until May 1, 1998. Therefore, when the amount was finalized, and the taxes were due, the Treasurer sent a bill to Payless. Counsel for Tippecanoe went on to argue that the burden was on Payless at that time to file another objection to the claim and have the issue argued on the merits at that time.

A bankruptcy court may award damages to the injured party for a willful violation of the discharge injunction pursuant to the court's civil contempt power imbedded in section 105 of the Code.[21] The use of that power is, however, discretionary.[22] And, the damages must be based on evidence of actual loss.[23] Tippecanoe did, in fact, hold an unsecured priority claim that was entitled to treatment in Payless' Plan, had Tippecanoe either objected to the Plan as proposed or responded to Payless' objection. Payless objected to this otherwise allowable claim on the basis that it was not yet due and owing. The Tippecanoe County Treasurer, acting without advice from counsel, clearly misinterpreted the result of the objection, and that is understandable. Further, Payless did not offer any direct proof of the amount of attorney's fees it incurred as a result of Tippecanoe's violation of the discharge injunction. Nor did it offer any examples of funding sources that have been reluctant to do business with Payless because of its refusal to pay the amount demanded by Tippecanoe. Payless' Plan caused stock to be issued in lieu of over 400 million dollars in debt. The stock, originally valued at $10.00 per share, has recently traded in the range of $2.00 per share or less. If those facts do not affect the confidence of Payless' lenders, I find it unlikely that they would be disturbed by Payless' refusal to pay a pre-petition tax debt. For the above reasons, I will deny Payless' request for sanctions.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

21. *In re Lafferty,* 229 B.R. 707, 712 (Bankr. N.D.Ohio 1998).

22. 11 U.S.C. § 105(a) (The Court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title) (emphasis added).

23. *Lafferty,* 229 B.R. at 712.